# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CHARLES NELSON, ET AL.**

**CIVIL ACTION**

**VERSUS**

**NO. 17-850-JWD-RLB**

**AMERICAS INSURANCE COMPANY**

## RULING AND ORDER ON DEFENDANT'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## ON CLAIMS UNDER LOUISIANA REVISED STATUTE 22:1318

This matter comes before the Court on the *Motion for Partial Summary Judgment on Claims Under Louisiana Revised Statute 22:1318* (Doc. 31) (the "*VPL Motion*") filed by Defendant Americas Insurance Company ("AIC" or "Defendant"). Plaintiffs Charles Nelson and Barbara Nelson ("Plaintiffs") oppose the motion (Doc. 39), and AIC has filed a reply (Doc. 50). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.

## I.    Introduction

The essential facts are undisputed. Plaintiffs had a homeowner's policy with AIC. Their property flooded. Then, after Plaintiffs began cleanup but before they made any major repairs, their property burned down. AIC paid Plaintiffs certain insurance proceeds but offset the amounts with what Plaintiffs recovered from their flood insurer.

Plaintiffs now bring this suit seeking, among other things, to recover the total amount of their homeowner's policy under Louisiana's Valued Policy Law, La. Rev. Stat. Ann. § 22:1318 ("VPL"). This statute provides in relevant part:

> Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, *in the case of total loss the insurer shall compute and indemnify or*

*compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset*, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer.

La. Rev. Stat. Ann. § 22:1318(A) (emphasis added).

AIC moves for summary judgment on this claim on the grounds that Plaintiffs' property was not rendered a total loss by a covered peril (fire) but was rather partially destroyed by a non-covered peril (flood). Defendant points to Fifth Circuit decisions and various Eastern and Western District cases. Plaintiffs oppose, arguing that they prevail because of the plain language of the statute and because there are questions of material fact precluding summary judgment.

For the following reasons, the *VPL Motion* is granted. Because Plaintiffs' property was damaged due to flooding (a non-covered peril) and fire (a covered peril), there was no "total loss" under the VPL, and Plaintiffs cannot recover the total amount of their homeowner's policy with AIC for the damages they sustained in the fire.

## II. Relevant Factual Background

### A. The Policy

AIC issued a homeowner's insurance policy, Policy Number 626401 (the "Policy"), for certain property owned by Plaintiffs in Independence, Louisiana (the "Property"). (Policy, Doc. 29-5.) The Policy provides the following:

**SECTION I – PERILS INSURED AGAINST**
**A. Coverage A – Dwellings and Coverage B – Other Structures**
    **1.** We insure against risks of direct physical loss to property described in Coverages **A** and **B.**
    **2.** We do not insure, however, for loss:
      **a.** Excluded under Section I – Exclusions;

(Policy, Doc. 29-5 at 19.)

With respect to the first, Coverage A (entitled "Dwelling") provides, "We cover: a. The dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling[.]" (Policy, Doc. 29-5 at 14.) Further, an "occurrence" is defined in the Policy as "an accident . . . which results, during the policy period , in: . . . 'Property damage[,]' " which is defined as "physical injury to, destruction of, or loss of use of tangible property." (Policy, Doc. 29-5 at 13.)

With respect to the second (Exclusions), the Policy provides:

**SECTION I – EXCLUSIONS**
A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause of event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
. . .
   **3. Water Damage**
     Water Damage means:
     **a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(Policy, Doc. 29-5 at 22–23.)

The Policy also provides that AIC will "not be liable in any one loss: . . . [f]or more than the applicable limit of liability." (Policy, Doc. 29-5 at 24.) The Policy describes the following "Limits" and "coverage for which premium was paid:"

| | |
|---|---|
| Coverage A – Dwelling | $ 138,500 |
| Coverage B – Other Structures | $ 13,850 |
| Coverage C – Personal Property | $ 69,250 |
| Coverage D – Loss of Use | $ 27,700 |
| Coverage E – Liability | $ 100,000 |
| Coverage F – Medical Payments | $ 1,000 |

(Policy, Doc. 29-5 at 2, 4.)

### B. The Flood Insurance Policy

Additionally, Occidental Fire & Casualty Company of North Carolina also issued to Plaintiffs a flood insurance policy on the Property. (Docs. 29-6; 29-7; *Petition for Breach of Contract, Breach of Duty of Good Faith and Fair Dealings and For Penalties* ("*Petition*") ¶ 6, Doc. 1-1 at 2.)

### C. The Great Flood and the Fire

Plaintiffs' home was damaged in August 2016 by the Great Flood. (*Petition*, ¶¶ 5, 8, Doc. 1-1 at 1–2.) Barbara Nelson testified that, after the flood, she never obtained "an estimate to repair the roof or interior damage . . . [b]ecause [they] were going to wait and redo the whole house . . . because [they] had flooded and all[.]" (B. Nelson Dep. 39:16–22, Doc. 50-1 at 2.) The areas that were damaged were in the living room and her bedroom. (B. Nelson Dep. 39:23–40:4, Doc. 50-1 at 3.)

There is conflicting evidence as to how much AIC paid Plaintiffs for wind damage sustained during the Great Flood. AIC asserts that it paid Plaintiffs $3,361.63. (Marcia Riley Aff. ¶ 21, Doc. 29-4 at 2; Letter, Doc. 29-21 at 1). Plaintiffs respond that this figure is misleading, as AIC adjuster Marcia Riley testified that Plaintiffs were really only paid $438.74, which was the actual cash value less the deductible. (Riley Dep. 41:10–20, Doc. 39-6 at 1.) Barbara Nelson similarly testified that she received about $400, after deductible and depreciation, for the wind damage. (B. Nelson Dep. 40:5–14, Doc. 50-1 at 3.)

In any event, Occidental issued two checks in December 2016 for the August 14, 2016, flood damage. (Occidental Checks, Doc. 29-7.) The checks were in the amounts of $61,357.81 and $12,290.58. (Occidental Checks, Doc. 29-7.) These flood payments will be discussed in greater detail below.

Plaintiffs alleged, "while [they] were attempting to obtain funds from their flood insurer to begin repairing their home, their home caught fire on October 20, 2016, due to an unknown cause." (*Petition* ¶ 8, Doc. 1-1 at 2.)

The parties dispute the extent to which work was done on the Property after the flood but before the fire. Specifically, Barbara Nelson attests that, "on October 19, [her] daughter, Tabatha Whitehead, had been to check on the [P]roperty and perform clean-up work, and found it in good condition, with the electricity working." (B. Nelson Aff. ¶ 4, Doc. 39-8 at 1.) Whitehead similarly stated that she checked on the Property on October 19, "which was done routinely, and performed clean-up work. [She] found the [P]roperty in good condition, with the electricity working, and the upper floor habitable." (Whitehead Aff. ¶ 5, Doc. 39-9 at 1.) Riley similarly admitted that Plaintiffs "went [to the Property] several times . . . just to check on the [P]roperty's condition, make sure that it was okay and to determine what they could do to begin repairs according to their statements[.]" (Riley Dep. 143:12–19, Doc. 39-12 at 2.)

Conversely, Defendant points to other evidence. Specifically, Barbara Nelson testified at her deposition that, at the time of the fire, there was no time frame for repairing the house, and no one had spent the night at the house since the flood. (B. Nelson Dep. 57:14–21, Doc. 30-5 at 2.) Barbara Nelson also stated:

Q: And at this time when Tony Robinson is there, did y'all start any kind of mitigation, any kind of mediation to repair the flood stuff, meaning did you start pulling items out, did you start tearing the walls down?

A: While he was there, no sir.

Q: It looks like he was there approximately September 7th, 2016; the fire occurs about somewhere October 20th, 2016.
   Between that time, did y'all start any of the pulling stuff out, pulling the walls down, anything like that?

A: We started pulling stuff out but not the walls down.

Q: Who was pulling some of the things out?

A: Me and Tiffany. . . .

Q: Y'all didn't hire anybody to do anything?

A: No, sir.

(B. Nelson Dep. 40:15–41:13, Doc. 50-1 at 3–4.) Additionally, Mrs. Nelson said that no one spent the night at the Property between the flood and the fire. (B. Nelson Dep. 43:17–20, Doc. 50-1 at 6.) Mrs. Nelson also stated she would go to the Property "every two or three weeks . . . to check on everything." (B. Nelson Dep. 43:21–44:4, Doc. 50-1 at 6–7.) At the time of the fire, it had been weeks since she had gone to the Property. (B. Nelson Dep. 45:6–12, Doc. 50-1 at 8.) Sometimes Mrs. Nelson would go with her other daughter Tabitha. (B. Nelson Dep. 58:13–24, Doc. 50-2 at 5.)

Tiffany Whitehead testified that she and Mrs. Nelson went to the Property maybe two or three times to check it. (T. Whitehead Dep. 15:2–21, Doc. 50-3 at 2.) When they went, they tried to clean out the contents, though they never moved furniture out. (T. Whitehead Dep. 15:22–16:4, Doc. 50-3 at 2–3.)

### D. Payments Made to Plaintiffs under the Policy for the Fire and under the Occidental Policy for the Flood

On May 11, 2017, AIC informed Plaintiffs of what payments they would receive for the fire damage to the Property. (Letter, Doc. 29-21 at 1; Riley Aff. ¶ 21, Doc. 29-4 at 2.) The payments were broken down as follows:

|  | Dwelling | Other Structures | Personal Property | Loss of Use | Total |
|---|---|---|---|---|---|
| Replacement Cost | $138,500.00 | $0.00 | $5,135.00 | $0.00 | $143,635.00 |
| Flood Building Estimate Grand Total | ($64,051.09) | | | | ($64,051.09) |
| Flood Debris Removal Total | ($1,573.77) | | | | ($1,573.77) |
| Prior AIC Claim 10004472 Gross Claim Amount | ($3,361.63) | | | | ($3,361.63) |
| Deductible | ($1,000.00) | | | | ($1,000.00) |
| Net Payment | $68,513.51 | $0.00 | $5,135.00 | $0.00 | $73,648.51 |

(Letter, Doc. 29-21 at 1.) Thus, Plaintiffs received $138,500 for Coverage A, minus a "Flood Building Estimate Grand Total of $64,051.09, a Flood Debris Removal Total of $1,573.77, the prior wind damage claim of $3,361.63, and Plaintiffs' deductible of $1,000, for a total of $68,513.51 for Coverage A and $5,135.00 for Coverage C. (Riley Aff. ¶ 21, Doc. 29-4 at 2.) Thus, Plaintiffs' net payment was $73,648.51. (Letter, Doc. 29-21 at 1; Riley Aff. ¶ 21, Doc. 29-4 at 2.)

AIC representative Riley similarly testified:

So it was a total loss. So we took the policy limit, subtracted all of the payments related to flood, which is excluded under our policy; and since the repairs hadn't been made for flood, we deducted those and then also there is a prior claim that [AIC] paid that those repairs were not made, so we deducted it as well and then applied the deductible. So that's how we came up with our net payment[.]

(Riley Dep. 104:11–19, Doc. 39-2 at 1.) AIC did not issue the payments until March 7, 2018. (AIC Checks, Doc. 39-5.)

Riley conceded that there was no provision in the Policy stating that AIC did not have "to pay the full stated value, face value when there [was] a total loss by a covered peril, such as fire." (Riley Dep. 136:9–17, Doc. 39-3 at 1.) However, Riley also stated that flooding was excluded under the Policy. (Riley Dep. 136:19–25, Doc. 39-3 at 1.)

Riley further said that "there was preexisting damage as well from a flood and wind claim, which were not repaired. (Riley Dep. 121:5–7, Doc. 39-7 at 1.)  However, the flood and wind damage did not cause the fire. (Riley Dep. 121:8–10, Doc. 39-7 at 1.)

Critically, Plaintiffs also emphasize that Riley could not "really tell just by looking at [an] estimate what was finally approved and paid by Occidental[.]" (Riley Dep. 113:15–24, Dep. 39-10 at 3.)  Riley stated that AIC was still requesting the relevant records and that, based on their information, AIC did not have enough information to issue payment until it received the "building estimate," which "cleared up" its questions. (Riley Dep. 113:24–114:7, Doc. 39-10 at 3–4.)  Riley later said that there was "no way for AIC to state whether any of the valuations or the damages that are listed [by Occidental] [were] either complete or accurate[.]" (Riley Dep. 149:10–15, Doc. 39-12 at 3.)

The net amount claimed on Plaintiffs' Proof of Loss for the flood damage was $67,946.93. (Pl. Ex. 8, Doc. 39-11 at 1.)  The full cost of repair listed on this document was $81,702.10 (Pl. Ex. 8, Doc. 39-11 at 1.)  Plaintiffs signed the Proof of Loss and verified under penalty of perjury that it was true and correct to the best of their knowledge. (Pl. Ex. 8, Doc. 39-11 at 1.)

Riley testified that this "included amounts that would only allow for repairs, partial repairs to the structure[.]" (Riley Dep. 142:11–16, Doc. 39-12 at 1)  She also said that she had no documentation that the Property "was deemed a total loss as a result of the flood by anybody[.]" (Riley Dep. 142:6–10, Doc. 39-12 at 1.)

### III.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its

opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### IV.  Discussion

#### A.  Parties' Arguments

##### 1. Defendant's Memorandum in Support (Doc. 31-1)

Defendant assert that the Fifth Circuit and Eastern and Western Districts of Louisiana "have all held that the VPL only applies when a total loss is caused by a covered peril." (Doc. 31-1 at 4.)  AIC primarily relies on *Chauvin v. State Farm*, 495 F.3d 232 (5th Cir. 2007), which purportedly involved damages by a covered peril (wind) and non-covered peril (flooding) and which held that "the VPL only requires an insurer to pay the agreed face value of the insured property if the property is rendered a total loss from a covered peril." (Doc. 31-1 at 5 (quoting *Chauvin*, 495 F.3d at 239).)  According to Defendant, *Chauvin* found that a contrary holding would

not further the purpose of the VPL. AIC also points to Eastern District case law which prohibited a homeowner from "double recovery" under homeowner's and flood policies. (Doc. 31-1 at 6–7 (citations omitted).) Similarly, a Western District case, *Turk v. Louisiana Citizens Property Insurance Corp.*, No. 06-144, 2006 WL 1635677 (W.D. La. June 7, 2006), *aff'd and remanded*, 281 F. App'x 262 (5th Cir. 2008), allegedly found that, if a loss is 50% caused by a covered peril and 50% caused by a non-covered peril, the VPL does not require the insurer to provide full recovery under the policy. (Doc. 31-1 at 6.)

Defendant maintains:

> As all of the cases cited herein show, the VPL simply cannot be construed to apply in situations where a total loss is caused partially by an excluded peril and partially by a covered loss. Plaintiffs' Property was damaged significantly by flooding in August 2016, two months before the subject fire. As a result of the flooding, Plaintiffs received payouts in excess of half of the coverage limits for the AIC policy from its flood insurance carrier and AIC. Thereafter, while the home was not repaired and inhabitable, the home caught on fire, and AIC issued payments to Plaintiffs which total the amount of the AIC policy, including the offset for the wind/flood payments already received by Plaintiffs. Accordingly, Plaintiffs have received payments representing the total amount of the AIC policy in this matter.

(Doc. 31-1 at 7–8.)

Defendant concludes, "Plaintiffs' damages/losses were not caused solely by a covered peril, and [P]laintiffs received payments representing the total amount of the AIC policy, including an offset for the wind/flood payments Plaintiffs already received before their [P]roperty was repaired or even habitable." (Doc. 31-1 at 8.) AIC closes by praying for partial summary judgment and seeking dismissal of Plaintiffs' VPL claims.

## 2. Plaintiffs' Opposition (Doc. 39)

Plaintiffs respond that "a reasonable jury could return a verdict finding that AIC must pay the valued policy limit for the Nelson's (sic) insured home that was totally destroyed as a result of a fire loss that occurred on October 20, 2016, as fire is a covered peril under the AIC homeowner's

policy[.]" (Doc. 39 at 2.)  Plaintiffs highlight the following points supposedly giving rise to dipsued

facts:

- AIC concedes that "the fire completely destroyed the building on the [P]roperty" and that there is no provision in the Policy stating that the VPL does not apply. (Doc. 39 at 2.)   According to Plaintiffs, AIC admitted that the Property was a "total loss" because of the fire, which was not caused by the flood, and, in any event, the AIC adjuster testified that she had no personal knowledge of the specific damages that were flood related.

- Plaintiffs have "never denied that their [P]roperty was involved in the August 2016 flooding event[,]" but the *Petition* does not describe "the value or extent of any such damage or, more particularly, the condition of the [P]roperty at the time of the total fire loss on October 20th, and AIC cannot/has not shown that its insureds were 'double dipping.' " (Doc. 39 at 4 n.4.)

- Because the VPL clearly did apply, "AIC admittedly issued an unconditional tender to the Nelsons under the fire peril coverage," as the Property was a total loss. (Doc. 39 at 4–5.)

- Plaintiffs also dispute the amount of money received by them from AIC for wind damage.

- The Policy is silent on AIC's right to any offset, whereas the VPL unequivocally says there can be no offset.

- Plaintiffs further claim they performed no repairs prior to the flood, as "debris removal, clean up and gutting had already begun with the intent to inhabit the house's second floor while later completing the remaining repairs on the first floor." (Doc. 39 at 7.)

Turning to the law, Plaintiffs distinguish Defendant's authority by arguing that none of

those cases involved "concurrent or sequential losses" but rather a single incident (such as

Hurricane Katrina) involving wind and flooding.   Here, Plaintiffs' Property "was **totally**

**destroyed by a single peril, fire in an isolated occurrence that AIC admits did not include**

**any flood, water, wind or other peril than accidental fire.**" (Doc. 39 at 9–10 (emphasis in

original).)  Further, according to Plaintiffs, Defendant has failed to prove that they would receive

a "double recovery" on "the same loss." (Doc. 39 at 10.)

Plaintiffs also dispute the amount AIC tendered. AIC has failed to produce any evidence establishing that an alternative valuation method should be used in this case, and AIC has pointed to no such policy provision. This is critical because, to contravene the VPL, the policy itself must give notice of a different method. Plaintiffs point to certain policy provisions supporting their position.

Further, Plaintiffs cite their own authority, specifically a Louisiana Fourth Circuit opinion, *Rosen v. United Services Automobile Ass'n,* 2012-0284 (La. App. 4 Cir. 11/14/12), 104 So. 3d 633, 639, which relied on *Landry v. Louisiana Citizens Property Insurance Co.*, 07-247 (La. App. 3 Cir. 8/28/07), 964 So. 2d 463, 477. These cases purportedly hold that flood water exclusions do not negate an insurer's duty to indemnify when the proximate cause of the loss was wind or rain, even when "flood waters contributed to the damage." (Doc. 39 at 13 (citations omitted).) Further, this authority allegedly says that each case turns on the specific facts involved and are left to the trier of fact.

According to Plaintiffs, *Chauvin* and the other Katrina cases are distinguishable because, again, they involved a "single hurricane event with concurrent or simultaneous, indistinguishable wind-and-flood losses." (Doc. 39 at 14.) *Chauvin* does not defeat Plaintiffs' claim either, because it purportedly recognized that homeowners are entitled under the VPL to full recovery in the event of a total loss. Further, in *Chauvin*, the total loss was caused by a non-covered peril, whereas, here, the total loss was caused by a covered peril. Plaintiffs point to another Fourth Circuit decision which purportedly allowed full recovery in a flood and wind situation because "most of the damage was caused by wind." (Doc. 39 at 15.)

Plaintiffs conclude:

Plaintiffs submit that in this case, the fire insurer cannot reduce its stated value exposure by arbitrarily ignoring the mandatory provisions of the VPL that apply to

the AIC policy. Ignoring, reducing and/or offsetting plaintiffs' claims related to the total fire loss of their [P]roperty on October 20, 2016, is prohibited by the VPL (La. R.S. 22:1318(A)) as a matter of law and public policy, and are not provided for in the AIC policy or policy application. La. R.S. 22:1318(B). As a result of the fire, AIC owes its insured (and Gateway Mortgage Group that has an insurable interest) the stated value of the dwelling for the total covered loss, not the adjusted or actual cash value of the [P]roperty prior to the loss, which is in direct contradiction with the VPL.

(Doc. 39 at 15.)

### 3. Defendant's Reply (Doc. 50)

Defendant responds:

Under well-established Fifth Circuit and district court jurisprudence, the VPL does not apply to the Plaintiffs' claims. Rather, the VPL applies only where a property is rendered a total loss from a covered peril. It does not apply when a property is destroyed partially by a covered peril and partially by a non-covered peril.

(Doc. 50 at 2 (numerous citations omitted).)  Defendant again hammers *Chauvin* and *Turk* as well as Judge Barbier's decision in *Halmekangas v. State Farm Ins. Co.*, No. 06-3942, 2008 WL 5381603 (E.D. La. Dec. 19, 2008), where there was a flood and subsequent fire.  Defendant also distinguishes *Rosen* and *Landry*, arguing that (1) *Rosen* did not discuss or address the VPL, and (2) the Third Circuit's *Landry* decision was overturned by the Supreme Court, which provided a more narrow ruling than the appellate court.

Lastly, Defendant seeks to exclude Plaintiffs' affidavits because they directly contradict prior deposition testimony. (Doc. 50 at 4.)  Defendant specifically notes the affidavit's recitation of other expenses which are irrelevant to the VPL claim, as the VPL only relates to the dwelling and not other losses.

AIC concludes:

Plaintiffs' damages/losses were caused partially by a non-covered peril and partially by a covered peril, and Plaintiffs received payments representing the total amount of the AIC [P]olicy, including an offset for the wind/flood payments

Plaintiffs already received before their Property was repaired or inhabited. Therefore, the VPL does not apply, and AIC is entitled to summary judgment as a matter of law.

(Doc. 50 at 5.)

## B. Applicable Law

### 1. Louisiana Law Generally

Where jurisdiction is founded on diversity, federal courts must apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (citing *Westlake Petrochems., L.L.C. v. United Polychem.*, Inc., 688 F.3d 232, 238 n.5 (5th Cir. 2012)).  Therefore, if there are no Louisiana Supreme Court cases on point, the Court must make an "Erie guess" by deciding how the Louisiana Supreme Court would rule. *Jorge-Chavelas v. Louisiana Farm Bureau Cas. Ins. Co.*, 307 F. Supp. 3d 535, 549 (M.D. La. 2018), *aff'd*, 917 F.3d 847 (5th Cir. 2019).

Applying the substantive law of Louisiana is different from other states because it follows the civil law tradition. This Court has previously stated:

> In the context of Louisiana law, the Court must follow the civilian method in carrying out this task. *See Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003); *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169 (5th Cir. 1999); *Stewart v. Ruston Louisiana Hosp. Co.*, No. 14-83, 2016 WL 1715192 at *3 (W.D. La. Apr. 27, 2016). This approach is followed because in Louisiana, jurisprudence is considered a secondary source of law, and the federal court is not bound by Louisiana appellate court opinions, particularly if there is "persuasive data that the highest court of the state would decide otherwise." *Am. Int'l Specialty Lines Ins. Co.* [*v. Canal Indem. Co.*, 352 F.3d 254, 260-61 (5th Cir. 2003).] Accordingly, the Western District has observed the civilian methodology requires examination of primary sources, if available on the given issue, prior to relying on lower court jurisprudence in order to make an "Erie guess." *Stewart*, 2016 WL 1715192 at *3.

*Id.*

Further, the Louisiana Supreme Court has stated, "we are a civilian jurisdiction in which legislation, the solemn expression of the legislative will, is the superior source of law." *Willis-Knighton Med. Ctr. v. Caddo Shreveport Sales & Use Tax Comm'n*, 04-0473 (La. 4/1/05), 903 So. 2d 1071, 1088. *See also* La. Civ. Code art. 1 ("The sources of law are legislation and custom."); La. Civ Code art. 2 ("Legislation is a solemn expression of legislative will.").

## 2. Principles of Statutory Construction

"The statutory interpretation articles in the Louisiana Civil Code provide that '[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.' " *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 238 (5th Cir. 2007) (quoting La. Civ. Code art. 9). "However, '[w]hen the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.' " *Id.* (quoting La. Civ. Code art. 10). "When interpreting a statute, '[t]he words of a law must be given their generally prevailing meaning,' and '[w]hen the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.' " *Id.* (quoting La. Civ. Code arts. 11, 12).

Additionally, "a statute is interpreted according to the principles of statutory construction, without leaning to one side or the other." *Chauvin*, 495 F.3d at 238 n.16 (citations and quotations omitted). Thus, the VPL is not construed against the insurer and in favor of the insured. *See id.*

## 3. Louisiana's Valued Policy Law

Again, the VPL statute provides, in relevant part:

Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, *in the case of total loss the insurer shall compute and indemnify or*

15

*compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset,* unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer.

La. Rev. Stat. Ann. § 22:1318(A) (emphasis added).

The Louisiana Supreme Court has explained the reason why Value Policy Laws were enacted:

> Valued Policy Laws were enacted in many states in the late 1800's and early 1900's "in response to the perception that insurers were profiting by selling insurance policies with inflated face values, and then, after the building suffered a total loss, litigating the actual value of the insured structure, even though the insured had been charged premiums for the policy limits...." John V. Garaffa, *The Uncertain Scope of "Hurricane Damage" Under State Valued Policy Laws,* 41 Tort Trial & Ins. Prac. L.J. 943, 946 (2005–2006), citing Tom Baker, *The Geneology of Moral Hazard,* 75 Tex. L. Rev. 237 (1996–1997). *See also Atlas Lubricant Corp. v. Federal Ins. Co. of New Jersey*, 293 So. 2d 550, 556 (La. App. 4 Cir. 1974) ("Valued policy laws ... dealing with [f]ire ins[urance] policies were enacted in the late 1800's and early 1900's principally as a protective measure for insureds."). A secondary objective of Valued Policy Laws was to simplify the adjustment process following a total loss and to facilitate prompt settlement of insurance claims. Garaffa at 946–47.

*Landry v. Louisiana Citizens Prop. Ins. Co.*, 2007-1907 (La. 5/21/08), 983 So. 2d 66, 76–77.

Thus, the Fifth Circuit has recognized that Louisiana's "VPL was enacted to fix the value of the insured property in the event of a total loss and thus, operates as a form of liquidated damages." *Chauvin*, 495 F.3d at 238 (citing *Hart v. N. British & Mercantile Ins. Co*., 182 La. 551, 162 So. 177, 181 (1935); *The Forge, Inc. v. Peerless Cas. Co*., 131 So.2d 838, 840 (La. Ct. App. 1961)). "[A]ccording to the Louisiana courts, the VPL was adopted for two main purposes:"

> (1) to keep insurers from writing insurance on property for more than it was actually worth, collecting premiums based on that overvaluation, and later arguing that the property was worth less than the face value when the property was destroyed; and (2) to discourage intentional destruction of property by insureds when they are permitted to over insure their property.

*Id.* at 239.

*Chauvin* is critical to this Court's analysis, so an extensive discussion is warranted. There, plaintiffs argued that their homes were rendered total losses by Hurricanes Katrina and/or Rita. *Id.* at 235. The insurers filed motions under Fed. R. Civ. P. 12(b)(6) and 12(c) "arguing, *inter alia*, that . . . even if the VPL extends to perils other than fire, the VPL does not allow full recovery when the total loss is not caused by a covered peril." *Id.* at 236. The homeowners responded, *inter alia*, "that the VPL requires an insurer to pay the agreed face value when (1) the property is rendered a 'total loss,' even if the 'total loss' is due to an excluded peril; so long as (2) a covered peril causes some damage, no matter how small, to the property." *Id.*

"In a well-reasoned opinion, the district court granted the insurers' motions," finding that the VPL is ambiguous but that the homeowner's "interpretation would lead to absurd consequences." *Chauvin*, 405 F.3d at 236. The district "court concluded that the focus of the VPL was on establishing the value of the property in the event of a total loss and was not intended to expand coverage to excluded perils." *Id.* "Thus, the [district] court determined that the VPL does not apply when a total loss does not result from a covered peril." *Id.*

The Fifth Circuit affirmed. *Id.* at 241. The appellate court began by explaining:

> In particular, the critical language in the statute providing that "in the case of a total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property" is susceptible of two possible meanings: (1) in the event of a total loss, an insurer is required to pay the homeowner the agreed full value of a policy as long as a covered loss causes some damage to the property, even if a non-covered peril renders the property a total loss; or (2) an insurer is only required to pay the homeowner the agreed face value of a policy when the property is rendered a total loss by a covered loss.

*Id.* at 238. Given the ambiguity, the Fifth Circuit was required to interpret the VPL "in a manner that best conform[ed] to the purpose of the law," both of which purposes were articulated above. *Id.* (citing La. Civ. Code art. 10).

The appellate court concluded, "[a]fter considering the purposes of the VPL," that "the insurers' construction of the VPL best conforms with its legislative purpose and thus, the VPL only requires an insurer to pay the agreed face value of the insured property if the property is rendered a total loss from a covered peril." *Chauvin*, 495 F.3d at 239. The court of appeals began by stating that "the homeowners' interpretation does nothing to further the purpose of the VPL":

> In particular, a finding that the statute requires insurers to pay the agreed face value of the property, even if an excluded peril (flooding) causes the total loss, runs counter to the VPL's effort to link insurance recoveries to premiums paid. Such an interpretation of the statute would force the insurer to pay for damage resulting from a non-covered peril for which it did not charge a premium. Also, because the focus of the VPL is on valuation (to set the *amount* payable when there is a total loss), not on coverage, the statute signals no intent to expand coverage to excluded perils.

*Chauvin*, 495 F.3d at 239–40. The Fifth Circuit then provided two additional reasons:

> Contrary to the homeowners' assertion, the insurers' construction of the VPL does not render the statute meaningless. In the case of a total loss resulting from a covered peril, the VPL continues to function as a liquidated damages clause by preventing insurers from challenging the value of the insured property and guaranteeing that the homeowners receive payment corresponding to the valuation of the property that was used to calculate their premiums. In addition, the homeowners' interpretation would lead to absurd results. As the district court stated:
>
> > If the VPL has the meaning plaintiffs ascribe to it, an insured holding a valued homeowner's policy that covered wind damage but specifically excluded flood losses could recover the full value of his policy if he lost 20 shingles in a windstorm and was simultaneously flooded under 10 feet of water. The insurer would thus have to compensate the covered loss of a few shingles at the value of the entire house. In effect, the insurer would be required to pay for damage not covered by the policy and for which it did not charge a premium. Such a result would be well outside the boundaries of any party's reasonable expectation of the operation of an insurance contract.

*Id.* at 240. The Fifth Circuit then ended its analysis, "the district court correctly concluded that Louisiana's VPL does not apply when a total loss does not result from a covered peril." *Id.* at 241.

*Chauvin* has been followed by several Eastern District cases. For example, in *Elloie v. Allstate Ins. Co.*, No. 07-4434, 2008 WL 2794726 (E.D. La. July 18, 2008), "property sustained damage from flood and wind damage," and plaintiff sought "the total face amount of the homeowner's policy under Louisiana's [VPL], without a deduction or offset, because [plaintiff's] property [was] a total loss." *Elloie*, 2008 WL 2794726, at *1. The insurer, Allstate, responded that flooding was an excluded peril and that the statute requires that the "total loss be caused by a covered peril, such as wind." *Id.* Judge Lemmon held:

> Although [the homeowner] alleges that the property was damaged by wind and flood and that the home is a total loss, there is no allegation that the total loss was caused by wind, a peril covered under the homeowner's policy. Accordingly, there are no disputed issues of material fact, and Allstate is entitled to judgment as a matter of law that Louisiana's VPL does not apply.

*Elloie*, 2008 WL 2794726, at *3–4. *See also Bradley v. Allstate Ins. Co.*, No. 07-3748, 2008 WL 2952974, at *4 (E.D. La. July 25, 2008) (relying on *Chauvin* and reaching same result with respect to the VPL).

*Chauvin* was also followed in *Turk v. Louisiana Citizens Property Insurance Corp.*, 281 F. App'x 262 (5th Cir. 2008) (per curiam). There, following the granting of partial summary judgment in favor of the insurers, appellant homeowners argued that "the district court erred in holding that [the VPL] does not require an insurer to pay the policy limits when the property is partially damaged by a covered peril but rendered a total loss by a non-covered peril." *Id.* "Their position is that if there is a total loss and *any* amount of damage due to a covered peril, the insurers must pay the full value placed on the property." *Id.* at 263 n.1. In a short analysis, the Fifth Circuit rejected the homeowners' argument and affirmed:

> After briefing was completed in the instant case, another panel of this Court addressed the question of whether property owners were entitled to the agreed face value of their respective policies if their homes sustained partial damage from a covered peril, but a non-covered peril rendered the property a total loss. *Chauvin v.*

> *State Farm Fire & Cas.*, 495 F.3d 232 (5th Cir. 2007). . . . In *Chauvin*, "the only issue . . . was whether, as a matter of law, any amount of damage caused by a covered loss, however small, triggered the VPL, even though the total loss was the result of a non-covered peril." *Id*. at 236 n. 4. This Court concluded that "the VPL only requires an insurer to pay the agreed face value of the insured property if the property is rendered a total loss from a covered peril." *Id*. at 239. *Chauvin* controls the instant case, requiring this Court to affirm the district court's judgment.

*Turk*, 281 F. App'x at 263–64.

This Court also notes as persuasive Chief Judge Haik's pre-*Chauvin* ruling from the Western District in *Turk v. Louisiana Citizens Property Insurance Corp.*, No. 06-144, 2006 WL 1635677, at *1 (W.D. La. June 7, 2006), *aff'd and remanded*, 281 F. App'x 262 (5th Cir. 2008). There, he found:

> [B]ecause the homeowner policies at issue exclude coverage for damage caused by flood water, and thus the policyholders did not pay a premium for flood coverage under their homeowner policies, [the VPL] cannot be construed to require State Farm or LA Citizens to pay the policy limits under their respective policies when the insured property was rendered a total loss, in whole or in part, by a non-covered peril such as flood waters, rather than in whole by a covered peril such as wind damage. That is, if the property damage is equal to a 100% loss and 50% of that loss is attributable to a covered peril and 50% of that loss is attributable to a non-covered peril, the Court does not read LA R.S. 22:695 to require insurers to pay the policy limit (i.e. 100% of the policy amount) in that instance. In such a case, the insurer would be responsible for paying only for the percentage of loss which is attributable to the covered peril.

*Id.*

Equally persuasive is Judge Barbier's post-*Chauvin* ruling in *Halmekangas v. State Farm Ins. Co.*, No. 06-3942, 2008 WL 5381603 (E.D. La. Dec. 19, 2008). In *Halmekangas*, the homeowner's property was damaged by flooding from Hurricane Katrina, and, three days later, the "property was completely destroyed by fire[.]" *Id.*, 2008 WL 5381603, at *1. The homeowner's insurer, ANPACLA, made certain payments under its policy, and a second insurer, State Farm, paid under the flood policy. *Id.*

In a motion for partial summary judgment, ANPACLA argued "that when an insured home is destroyed by flood under a flood policy as well as some other covered peril under a homeowners policy, the insured owner cannot receive a double recovery by recovering proceeds under both policies for the same damages." *Id.* ANPACLA sought "a credit for **all** insurance proceeds paid to [the homeowner] up to the pre-storm value of the home to prevent any windfall to the insured." *Id.* (emphasis in original). Plaintiff responded that ANPACLA's authority all involved "**concurrent causes** of damage to an insured property[,]" not situations, as here, where property is "partially flooded, and . . . then *later* destroyed completely by fire." *Id.* (emphasis in original) The homeowner further argued that, under the VPL, "he is entitled to the total value of his loss under the policy-namely the full pre-storm value of his home," and "any flood damage proceeds need not have been used to repair the flooded structure, and therefore should not be credited against the amounts he is due under the ANPACLA policy for the total destruction of his home by fire." *Id.* "In sum, [the homeowner] argues that he is not seeking a double recovery as suggested by ANPACLA, but is simply attempting to be made whole for his loss." *Id.*

Judge Barbier granted the motion in part and denied it in part. He explained:

Under Louisiana's VPL, an insurer is only required "to pay the agreed face value of the insured property **if the property is rendered a total loss from a covered peril.**" *Chauvin v. State Farm Fire & Cas. Co.,* 495 F.3d 232, 239 (5th Cir. 2007) (emphasis added). In addition, however, a homeowner's recovery "is limited to any previously uncompensated losses that are covered by his homeowner's insurance and which when combined with his flood proceeds do not exceed the value of his property." *Ragas v. State Farm Fire & Cas. Co.,* 2008 WL 425536, *6 (E.D. La. 2/11/08). Stated differently, while "it is fairly common, especially in Katrina-related cases, for a plaintiff to have both wind and flood damages, and coverages for both, this does not entitle the plaintiff to double recovery in the event of a given loss." *Id.* Therefore, to the extent that a plaintiff may attempt to "re-characterize as wind damage those losses for which [he] has already been compensated by previously attributing them to flood waters," a court should not allow such a double recovery. *Id.* Nonetheless, plaintiffs can recover under both a flood and non-flood policy when a flood and another covered peril combine to result in a total loss "if they can segregate and prove the two types of damages." *Wellmeyer v. Allstate Ins.*

*Co.,* 2007 WL 1235042, *2 (E.D. La. 2007). Furthermore, even when the VPL applies due to a total loss caused by a covered peril, "Louisiana's Valued Policy Law [does not] authorize a double recovery on the same loss." *Williams v. State Farm Fire & Cas. Co.,* 2008 WL 4948491, *1 (E.D. La. 2008). To the contrary, "when applicable, [the VPL] addresses only the **appropriate valuation of a total loss** that is caused by a covered peril." *Id.* (emphasis added).

Under the applicable law as laid out above, ANPACLA's motion should be granted, but only to the extent that it seeks a credit for flood insurance payments covering actual damage to the insured property by flooding. [The homeowner] cannot procure a double recovery based on payments for the same damage under his flood and homeowner's policy even if the fire, a covered peril under the valued policy, caused the total loss of his property. Nonetheless, [the homeowner] has the right to segregate and prove what damages were caused by flood and what damages were caused by the subsequent fire. Thus, although [the homeowner] cannot recover more than the pre-Katrina value of his home by collecting from both his homeowners and flood insurer, he should nonetheless have the opportunity to segregate which damages were caused by flood versus fire to recover up to the entire pre-Katrina value of his home. Thus, despite the fact that ANPACLA is correct that [the homeowner] cannot recover twice for the same damage, there are material issues of fact precluding summary judgment on the specific question of how much of the remainder of the damage amounts claimed by [the homeowner] vis-a-vis the pre-Katrina value of his home were caused by flood versus fire. Furthermore, at least based on the pleadings for the present motion, there is a material issue of fact as to the actual pre-Katrina VPL valuation of the total loss of the home, which is crucial to a determination of whether and how much a flood offset should apply in this case. Thus, while ANPACLA's motion should be granted as it relates to the very basic and general premise that [the homeowner] cannot recover twice under different policies for the same damage, it should be granted only on that narrow and self-evident basis.

*Halmekangas*, 2008 WL 5381603, at *2 (emphasis in original). Judge Barbier granted the motion "***only insofar as it seeks a ruling on the basic principle that*** [***the homeowner***] ***cannot recover twice for the same damages***-that is, [the homeowner] cannot recover under his fire policy for the same damages that he has already recovered under his flood policy." *Id.* at *3 (emphasis in original). Thus, the homeowner was entitled to present evidence "to the extent that there remain factual issues pertaining to the actual pre-storm value of [his] property, and to the extent that [he] may be able to segregate what damages [were] attributable to the flooding during Katrina from those damages attributable to the fire after Katrina[.]" *Id.* However, ANPACLA was not entitled

22

to summary judgment "specifically awarding it an offset in the full $83,399.57 amount paid by [the homeowner's] flood insurer because there remain[ed] issues of fact regarding whether the post-Katrina fire resulted in damages that were not included in the flood insurance payment." *Id.*

### C. Analysis

#### 1. Plaintiffs Cannot Recover Under the VPL.

Having carefully considered the matter, the Court finds that *Chauvin* and its progeny control this case. As in *Chauvin*, the phrase "total loss" in the VPL is ambiguous, so the Court must turn to the purpose of the law. *Chauvin*, 495 F.3d at 238. Like *Chauvin*, Plaintiffs' interpretation "does nothing to further the purpose of the VPL":

> In particular, a finding that the statute requires insurers to pay the agreed face value of the property, even if an excluded peril (flooding) causes the total loss, runs counter to the VPL's effort to link insurance recoveries to premiums paid. Such an interpretation of the statute would force the insurer to pay for damage resulting from a non-covered peril for which it did not charge a premium.

*Id.* at 239–40. Further, AIC's interpretation does not cause the VPL to be meaningless, as Plaintiffs would have still been protected in the event of a "total" loss by fire, as opposed to a partial loss by a non-covered event. *Id.* at 240. Lastly, as in *Chauvin*, Plaintiffs' stance leads to absurd results; AIC would be forced to pay the full policy limits for only a partial loss, as part of the home was destroyed by flood and the remainder by fire. *Id.* at 236. In short, *Chauvin* is clear: "Louisiana's VPL does not apply when a total loss does not result from a covered peril." *Id.* at 241.

Here, "a total loss did not result from a covered peril," *id.*, and no reasonable jury could conclude otherwise. Plaintiffs' primary evidence that the home was a "total loss" was Riley's statement to this effect, but Riley's testimony must be read in context:

> So it was a total loss. So we took the policy limit, subtracted all of the payments related to flood, which is excluded under our policy; and since the repairs hadn't been made for flood, we deducted those and then also there is a prior claim that

23

[AIC] paid that those repairs were not made, so we deducted it as well and then applied the deductible. So that's how we came up with our net payment[.]

(Riley Dep. 104:11–19, Doc. 39-2 at 1.) Thus, Riley specifically stated (1) that flood damage was excluded under the Policy, and (2) that the flood repairs had not been made. Even construing this testimony in a light most favorable to Plaintiffs and drawing reasonable inferences in their favor, no reasonable juror could conclude from Riley's testimony, read as a whole, that AIC conceded the issue and admitted that the home was a "total loss" for purposes of the VPL.

Other evidence confirms this as well. For example, Riley testified that "there was preexisting damage as well from a flood and wind claim, which were not repaired." (Riley Dep. 121:5–7, Doc. 39-7 at 1.) More importantly, Occidental issued two checks in December 2016 for the August 14, 2016, loss in the amounts of $61,357.81 and $12,290.58. (Occidental Checks, Doc. 29-7.) Further, Plaintiffs themselves submitted the Proof of Loss that listed the full cost of repair as $81,702.10, and Plaintiffs signed this document and certified that it was true and correct. (Pl. Ex. 8, Doc. 39-11 at 1.) Thus, even if Riley could not "really tell just by looking at [the] estimate what was finally approved and paid by Occidental" (Riley Dep. 113:15–24, Doc. 39-10 at 3) and even if she conceded that there was "no way for AIC to state whether any of the valuations or the damages that are listed [by the flood company] [were] either complete or accurate" (Riley Dep. 149:1–15, Doc. 39-12 at 3), all reasonable jurors would conclude from Riley's statement that there was unrepaired preexisting damage from the flood, the Occidental checks, and the Proof of Loss form that the Property was, at the very least, damaged by the flood to such an extent that the fire alone did not render the Property a "total loss."

Further, there is no question of fact that the Property was not fully repaired at the time of the fire. The Court recognizes that Plaintiffs present evidence that they "checked on" the Property and performed "clean-up work" (B. Nelson Aff. ¶ 4, Doc. 39-8 at 1; Whitehead Aff. ¶ 5, Doc. 39-

9 at 1.) Further, Riley admitted that the Plaintiffs checked on the Property "to determine what they could do to begin repairs according to their statements[.]" (Riley Dep. 143:12–19, Doc. 39-12 at 2.) However, Plaintiffs had not begun pulling the walls down and had not hired anyone to do repair work. (B. Nelson Dep. 40:15–41:13, Doc. 50-1 at 3–4.) Barbara Nelson also testified that, at the time of the fire, there was no time frame for repairing the house, and no one had spent the night at the house since the flood. (B. Nelson Dep. 57:14–21, Doc. 30-5 at 2.) Thus, all reasonable jurors would conclude that the Property had not been fully repaired at the time of the fire.

Thus, under *Chauvin* and its progeny, Plaintiffs cannot recover the full value of the policy under the VPL when part of the loss was caused by a non-covered peril like flooding. *See Chauvin*, 495 F.3d at 240–41; *Elloie*, 2008 WL 2794726, at *3–4; *Bradley*, 2008 WL 2952974, at *4; *Turk*, 2006 WL 1635677, at *1, *aff'd and remanded*, 281 F. App'x 262 (5th Cir. 2008). Summary judgment on this issue is thus granted.

### 2. Plaintiffs' Legal Arguments Are Unpersuasive.

Plaintiffs' authority does not save them on the VPL issue. The Louisiana Supreme Court's holding in *Landry* (which overturned the Third Circuit's opinion) was that "defendant validly provided a different method of loss computation as permitted by [Louisiana's VPL;]" that, "[c]onsequently, the valuation provisions of the statute are not applicable to plaintiffs' claim[;]" and that "defendant is entitled to settle plaintiffs' covered property losses as set forth in the policy." *Landry*, 983 So. 2d at 83. *Landry* specifically declined to address the question raised by *Chauvin* and this case:

> Whether the statutory valuation provisions would require an insurer to pay the face value of the policy when a total loss is caused concurrently with a covered and a non-covered losses is irrelevant because those provisions no longer apply once a different method of loss computation is validly set forth.

*Id.* *Turk* highlighted this language and recognized, "Of course, the question deemed irrelevant is the only question that is before this Court on interlocutory review." *Turk*, 281 F. App'x at 264 n.2. And, as one treatise explained:

> [*Landry*] decided one issue, but left two others open. The opinion decided that there is an acceptable "opt-out" valuation provision within the VPL and that it was validly exercised by the defendant insurer and thus governed the resolution of the dispute in Landry. The two issues left open are the two that had attracted the most attention before the opinion. The first was whether the VPL applies only to "fire policies" or whether it might also apply to "fire losses" within policies that contain fire coverage along with others, or might also apply to homeowners' policies generally, regardless of whether the loss in question is a "fire loss" or not. And the second was whether the VPL—once a court decides that it is applicable to the case before it—requires payment of the full policy proceeds for a total loss caused in part by a covered peril and in part by a non-covered peril. The resolution of these issues must await another case and another supplement.

15 William Shelby McKenzie & H. Alston Johnson, III, *Louisiana Civil Law Treatise, Insurance Law & Practice* § 10:27 (4th ed. 2018). Thus, *Landry* does not save Plaintiffs' VPL claim.

*Rosen,* 104 So. 3d 633, is equally unavailing on the VPL issue. As Defendant contends, the VPL is not discussed at all in the case.

Plaintiffs also try to distinguish Defendant's authority from the Fifth Circuit by arguing that this suit involves two separate events rather than a single incident like Hurricane Katrina. However, the homeowner in *Halmekangas* made the same argument when the flooding and fire were separated by three days, and Judge Barbier rejected this position. *Halmekangas*, 2008 WL 5381603, at *1. Ultimately, the homeowners could not obtain double recovery in *Halmekangas*, *Id.* at *1–2. Though *Halmekangas* involved a three-day break between the flood and fire and though the instant case involved a two month break, the Court finds this to be a distinction without a difference, particularly in light of the fact that, in both cases, the homes had not been fully

repaired following the flood damage and remained unoccupied. Ultimately, the same result as in *Halmekangas* is warranted here.

Lastly, the Court recognizes that *Chauvin* is not exactly on all fours. In *Chauvin*, the property was partially damaged by a covered peril and then totally lost by a non-covered peril. *Chauvin*, 495 F.3d at 238–41. Conversely, here, the first loss was a non-covered peril and the final loss was a covered peril. However, the Court reaches the same result using the same framework laid out by *Chauvin* (interpreting the ambiguity in light of the purpose of the law). In the end, in both *Chauvin* and this case, part of the loss was caused by a covered peril and part was caused by a non-covered peril, so Plaintiffs cannot recover under the VPL. Again, as Fifth Circuit said in *Chauvin* (quoting the district court):

> If the VPL has the meaning plaintiffs ascribe to it, an insured holding a valued homeowner's policy that covered wind damage but specifically excluded flood losses could recover the full value of his policy if he lost 20 shingles in a windstorm and was simultaneously flooded under 10 feet of water. The insurer would thus have to compensate the covered loss of a few shingles at the value of the entire house. In effect, the insurer would be required to pay for damage not covered by the policy and for which it did not charge a premium. Such a result would be well outside the boundaries of any party's reasonable expectation of the operation of an insurance contract.

*Id.* at 240. Thus, under *Chauvin* and the above authorities, Defendant is entitled to partial summary judgment on this issue.

### 3. This Ruling Is Limited.

The Court has found that the VPL does not apply to allow Plaintiffs to recover the total amount of the AIC policy. However, the Court must emphasize that this holding is limited.

As Judge Barbier found, Defendant's motion is granted "***only insofar as it seeks a ruling on the basic principle that* [*the homeowner*] *cannot recover twice for the same damages***-that is,

[the homeowner] cannot recover under his fire policy for the same damages that he has already recovered under his flood policy." *Halmekangas*, 2008 WL 5381603, at *3 (emphasis in original). That is, AIC is only "responsible for paying only for the percentage of loss which is attributable to the covered peril." *Turk*, 2006 WL 1635677, at *1. Phrased another way, Plaintiffs may be allowed to submit evidence "to the extent that [they] may be able to segregate what damages attributable to the flooding . . . from those damages attributable to the fire [.]" *Halmekangas*, 2008 WL 5381603, at *3.

This is important because, here, Defendant has filed a second motion for partial summary judgment seeking a finding that:

> as a matter of law, [P]laintiffs may not obtain double recovery for the same loss under both their flood policy and their homeowners policy, and that [P]laintiffs' recovery under their homeowners policy is limited to the difference between the policy limits and the $61,357.81 under Coverage A and $12,290.58 under Coverage C in insurance payments that [P]laintiffs already indisputably received under their flood insurance policy, and prior wind claim.

(Doc. 30-1 at 1.) While the Court suspects there will be questions of material fact on this issue,[1] the Court will withhold judgment on this issue until it rules on this second motion.

## V.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Partial Summary Judgment on Claims Under Louisiana Revised Statute 22:1318* (Doc. 31) filed by Defendant Americas Insurance Company is **GRANTED.** Because Plaintiffs' Property was damaged due to flooding (a non-covered peril) and

---

[1] While Defendant submitted evidence of the *amounts* paid by Occidental for the flood, again, Riley testified that she could not "really tell just by looking at [the] estimate what was finally approved and paid by Occidental[.]" (Riley Dep. 113:15–24, Doc. 39-10 at 3.) Riley later said that there was "no way for AIC to state whether any of the valuations or the damages that are listed [by Occidental] [were] either complete or accurate[.]" (Riley Dep. 149:1–15, Doc. 39-12 at 3.) Given this evidence, at this time, there appear to be, at very least, genuine issues of material fact precluding summary judgment on the extent of Defendant's offset.

fire (a covered peril), there was no "total loss" under the VPL, and Plaintiffs cannot recover the total amount of their homeowner's policy with AIC for the damages they sustained in the fire.

Signed in Baton Rouge, Louisiana, on <u>November 1, 2019</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**