# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

CHARLES NELSON, ET AL.

VERSUS

AMERICAS INSURANCE COMPANY

CIVIL ACTION

NO. 17-850-JWD-RLB

## RULING AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 30)

This matter comes before the Court on the *Motion for Summary Judgment* (Doc. 30) (the "*Offset Motion*") filed by Defendant Americas Insurance Company ("AIC" or "Defendant"). Plaintiffs Charles Nelson and Barbara Nelson ("Plaintiffs") oppose the motion (Doc. 44), and AIC has filed a reply (Doc. 52). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is granted in part and denied in part.

### I. Relevant Background

The relevant factual background and much of the relevant law was discussed in the Court's *Ruling and Order on Defendant's Motion for Partial Summary Judgment on Claims Under Louisiana Revised Statute 22:1318* (the "*VPL Ruling*"). (Doc. 56.) In short, Plaintiffs had a homeowners policy with AIC (the "Policy") insuring their property in Independence, Louisiana (the "Property"). The Property flooded. Then, after Plaintiffs began cleanup but before they made any major repairs, the Property burned down. AIC paid Plaintiffs certain insurance proceeds but offset the amounts with what Plaintiffs recovered from their flood insurer, Occidental Fire & Casualty Company of North Carolina ("Occidental").

In the instant motion, Defendant seeks partial summary judgment to establish:

> [A]s a matter of law, [P]laintiffs may not obtain double recovery for the same loss under both their flood policy and their homeowners policy, and . . . [P]laintiffs' recovery under their homeowners policy is limited to the difference between the policy limits and the $61,357.81 under Coverage A and $12,290.58 under Coverage C in insurance payments that [P]laintiffs already indisputably received under their flood insurance policy, and prior wind claim.

(Doc. 30-1 at 1.) Plaintiffs oppose, arguing, *inter alia*, that questions of fact preclude summary judgment.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

Particularly important here, "if the movant bears the burden of proof on an issue, either

2

because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure [(that is, beyond doubt)] all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *peradventure*, MERRIAM-WEBSTER'S DICTIONARY (2019), available at https://www.merriam-webster.com/dictionary/peradventure. Phrased another way, "[w]here the summary judgment movant bears the burden of proof at trial, the summary judgment evidence must affirmatively establish the movant's entitlement to prevail as a matter of law." *Universal Sav. Ass'n v. McConnell*, 14 F.3d 52 (5th Cir. 1993) (unreported).

### III. Discussion

#### A. Parties' Arguments

##### 1. Defendant's Memorandum in Support (Doc. 30-1)

Defendant first argues:

> Because the Policy is the contract between the insurer and the insureds, and it clearly states the maximum amount of the loss, the total sum of liability cannot exceed the amounts set forth in the Policy. As such, AIC is entitled to a judicial determination that the total amount of liability is $138,500.00 under Coverage A and $69,250.00 under Coverage C and that the [P]laintiffs' pre-occurrence Property value cannot exceed same.

(Doc. 30-1 at 4–5.)

Second, Defendant asserts that Plaintiffs "suffered two segregable losses – one covered pursuant to the Policy and one not. As such[,] AIC is not required to issue payment for damages already compensated [by Occidental] and not covered under their Policy." (Doc. 30-1 at 5.) Thus, according to Defendant, Plaintiffs can recover "no more than the difference between the Policy limit of the damaged [P]roperty and the $61,357.81 and $12,290.58 that [P]laintiffs have already received under their flood insurance policy." (Doc. 30-1 at 5–6.) Defendant relies primarily on *Bradley v. Allstate Insurance Co.*, 620 F.3d 509 (5th Cir. 2010) and *Halmekangas v. State Farm*

3

*Ins. Co.*, No. 06-3942, 2008 WL 5381603 (E.D. La. Dec. 19, 2008), but AIC cites to a number of other Eastern District rulings as well. Alternatively, Defendant urges that it is "still entitled to an offset in the amount of [P]laintiffs' flood recovery" and that, "[a]t the very least, should this Court not establish the full measure of [P]laintiffs' potential recovery in the motion *sub judice*, . . . this Court [should] establish the value of the offset of [P]laintiffs' flood recovery." (Doc. 30-1 at 6.)

Third, Defendant maintains that the law prohibits a "double recovery." (Doc. 30-1 at 7.) Defendant argues that "[P]laintiffs' recovery should be limited to the difference between the limits of liability of [their] Policy and the amount Occidental paid to [them] pursuant to their flood policy." (Doc. 30-1 at 7.) "Specifically, AIC is only requesting the offset between the *policy limit* and the amount paid to [P]laintiffs via their flood policy." (Doc. 30-1 at 7 (emphasis in original).) Defendant states:

> Here, [P]laintiffs applied for and received $61,357.81 and $12,290.58 under their flood insurance policy for the damage caused to their Property in August 2016. Thus, any recovery under the dwelling or personal property coverage of [P]laintiffs' homeowners policy is limited, as a matter of law, to the pre-flood limit of liability, less $61,357.81 and $12,290.58[,] and AIC should be granted summary judgment to this effect.

(Doc. 30-1 at 8.)

Fourth, Defendant argues that Plaintiffs should be estopped from re-characterizing flood damage as fire damage. Defendant cites to other cases using the doctrine of judicial estoppel, including employment discrimination ones. Defendant states:

> [I]n submitting a flood insurance claim and accepting payment under their flood policy, [P]laintiffs knowingly represented that a portion of the damage to their [P]roperty was a "direct physical loss by or from flood," and was not directly or indirectly caused by fire. As a result, this Court should hold as a matter of law, as it did in *Bradley*, that [P]laintiffs are now barred from re-characterizing the same damage for which they have already claimed and received compensation from their flood insurer.

(Doc. 30-1 at 9–10.)

4

## 2. Plaintiffs' Opposition (Doc. 44)

Plaintiffs respond that Defendant is not entitled to any offset as a matter of law under Louisiana's Valued Policy Law, La. Rev. Stat. Ann. § 22:1318 (the "VPL").[1] Further, as a matter of contract, the Policy does not allow for any offsets.

Plaintiffs first highlight a number of alleged questions of material fact precluding summary judgment. First, Defendant has not shown that the VPL does not apply. "Second, AIC fails to prove any 'double recovery.[']" (Doc. 44 at 3.) Third, the fire and flooding were separate events, and AIC allegedly admitted that the total loss occurred from the covered peril of a fire. Fourth, "there are issues of fact that AIC has not resolved relative to the actual amounts of prior payments, the actual damages addressed, and the extent of repairs or use of the proceeds prior to the separate fire loss[.]" (Doc. 44 at 3.) For example, AIC claims it paid $3,361.63 for the wind damage claim, but the Nelsons only received about $438.74. Further, there are inconsistences as to what was paid under Coverage A. Fifth, Defendant claims the home was not repaired or habitable at the time of the fire, but this is disputed.

Turning to the law, Plaintiffs next argue that the instant case involves concurrent losses, not a loss from a single occurrence like Hurricane Katrina. Further, "AIC fails to show that the [P]laintiffs' claim exceeded its losses"; the flood payment for Coverage A was $61,357.81, AIC's payment for Coverage A was $68,513.51, so the combined total is $129,871.32. This is well short of (a) the AIC policy limit for Coverage A of $138,500.00; (b) the purchase price of $149,000.00; (c) the mortgagee's interest in the Property ($146,301.00); and (d) AIC's own replacement cost damage of $178,854.28. (Doc. 44 at 8–9.) Plaintiffs also urge that the key question is whether the flood claim was the predominate cause of the loss, and Defendant has not met that burden here.

---

[1] After Plaintiffs filed this opposition, the Court found in the *VPL Ruling* that this statute did not apply in this case. (*See* Doc. 56.)

Moreover, the law provides that "Plaintiffs are entitled to recover any previously uncompensated losses that are covered by the homeowner's policy and which, when combined with their flood proceeds, do not exceed the value of their [P]roperty." (Doc. 44 at 9 (citing *Johnson v. State Farm Fire & Cas. Co.*, No. 07-1226, 2008 WL 2178059, at *2 (E.D. La. May 19, 2008).) Because, "here, the loss assessment is contested . . . the proper measure of actual loss (sic), like the measure of recovery under the [P]olicy, *is a question of fact*." (Doc. 44 at 9 (emphasis in original, citation omitted).) Plaintiffs conclude:

> AIC cannot shift its burden to [P]laintiffs when it has failed to carry either burden, and certainly not both. There simply is **no policy provision that allows for the offsets/deductions** that are expressly prohibited by the VPL, and AIC admits the policy states that the face value is the amount due for a total loss. The Court cannot determine that any amount should be applied as a credit where AIC has not carried its burden of proving actual payments, extent of damages, and/or causation. AIC was arbitrary, capricious and acted in bad faith when it reduced its insureds fire loss by prior claims that did not cause the total loss that was caused solely by a covered peril, and by amounts that were grossly exaggerated and included multiple deductibles. AIC owed its insureds $138,500.00 as the replacement cost for the total fire loss of October 20, 2016, less a single $1,000 policy deductible, a difference of $68,986.49 more than was **untimely** paid as an unconditional settlement of the fire claim by AIC on March 12, 2018, more than sixteen months after the fire loss.

(Doc. 44 at 10 (emphasis in original).)

### 3. Defendant's Reply (Doc. 52)

Defendant begins its reply by largely reiterating the facts it believes are undisputed. Defendant then responds to Plaintiffs' argument that the Property was worth more than the insurable interest because (a) the statement of loss listed a different value, and (b) the mortgage amount is higher. Defendant calls these issues "red herrings," as the mortgage value is irrelevant to the insurer's liability and, in any event, includes more land than is insured under Coverage A. (Doc. 52 at 3.) Defendant also notes that Plaintiffs have no estimate of repair or expert "to demonstrate that the cost of repair is greater than the insurable interest of the Property." (Doc. 52

6

at 3.) As a result, there is no competent evidence showing "that the amount of the home is greater than the insurable interest." (Doc. 52 at 3 (emphasis omitted).) Defendant then says:

> Notwithstanding the foregoing, even if [P]laintiffs' argument carried any weight or was supported by evidence in any way, then [P]laintiffs would be subject to the co-insurance penalty set forth in the Policy. Based on [P]laintiffs' unsupported allegation, their home was not insured to at least 80% of its pre-loss value, thereby triggering the coinsurance penalty clause. As such, the total amount [P]laintiffs would be able to recover would be $106,645.00, which is less than that to which Defendants have (sic) already paid.

(Doc. 52 at 3.) Thus, "AIC is entitled to a judicial determination that the total amount of liability is $138,500.00 under Coverage A and $69,250.00 under Coverage C, and that the [P]laintiffs' pre-occurrence Property value cannot exceed same." (Doc. 52 at 4.)

Defendant next argues that the VPL does not apply and that the tenders AIC made were timely and in good faith. Since these are the subject of the *VPL Ruling* (Doc. 56) and another pending motion for partial summary judgment (Doc. 29), this discussion is omitted.

Defendant then contends again that it "is not required to issue payment for damages already compensated and not covered under its Policy" and that "[a]ny potential award for damages is limited to the difference between the Policy limits value of the [P]laintiffs' structure, personal property, and contents, and the post-loss value of [P]laintiffs' structure, personal property, and contents, less any payments received." (Doc. 52 at 4.) That is, "the damages from each loss [(flood and fire)] have already been segregated, and AIC is only responsible for those damages attributed to the covered fire loss." (Doc. 52 at 4.) Alternatively, "AIC is entitled to an offset in the amount of [P]laintiffs' flood recovery." (Doc. 52 at 5.)

Defendant concludes:

> Plaintiffs are not entitled to a double recovery by re-classifying damages previously attributed to flood as now being attributable to fire. In its Opposition, [P]laintiffs fail to provide competent summary judgment evidence, or case law, to

7

> demonstrate that they are entitled to a determination that Defendant must pay for those damages already compensated, and unrepaired, by flood.

(Doc. 52 at 5.)

### B. Applicable Law

"An insured party in Louisiana may generally 'recover under all available coverages provided that there is no double recovery.' " *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 521 (5th Cir. 2010) (quoting *Cole v. Celotex,* 599 So.2d 1058, 1080 (La. 1992) (quoting 15A *Couch on Insurance* § 56:34 (2d ed.1983))); *see also Albert v. Farm Bureau Ins. Co.,* 940 So.2d 620, 622 (La. 2006) ("... Louisiana law does not allow for double recovery of the same element of damages."). "The fundamental principle of a property insurance contract is to indemnify the owner against loss, that is 'to place him or her in the same position in which he would have been had no [accident] occurred.' " *Id.* (quoting *Berkshire Mut. Ins. Co. v. Moffett,* 378 F.2d 1007, 1011 (5th Cir. 1967)). "Consequently, 'while an insured may not recover in excess of his actual loss, an insured may recover under each policy providing coverage until the total loss sustained is indemnified.' " *Id.* (quoting *Cole,* 599 So.2d at 1080 (quoting Appleman, *Insurance Law and Practice* § 5192 (1981))).

"An insured 'whose property sustains damage from flood and wind can clearly recover for his or her segregable wind and flood damages except to the extent that he seeks to recover twice for the same loss.' " *Bradley*, 620 F.3d at 523 (quoting *Johnson v. State Farm Fire & Cas. Co.,* No. 07–1226, 2008 WL 2178059, at *2 (E.D. La. May 19, 2008) (citing *Weiss v. Allstate Ins. Co.,* No. 06–3774, 2007 WL 891869, at *2 (E.D. La. Mar. 21, 2007))). "Insureds are entitled to recover any previously uncompensated losses that are covered by their homeowners policy and which, when combined with their flood proceeds, do not exceed the value of their property." *Id.* (citing *Johnson,* 2008 WL 2178059, at *2). "The homeowners and flood insurance policies provide

distinct coverages; each protects against a different form of damage." *Id.* (citing *Ferguson v. State Farm Ins. Co.,* No. 06–3936, 2007 WL 1378507, at *4 (E.D. La. May 9, 2007) ("While it is true that plaintiffs paid for two separate policies, one homeowners and one flood, that does not equate to double coverage in the event of a given loss. The flood policy is not excess insurance. Instead, it covers a loss not covered by the homeowner policy.")). "The interplay between the segregation of flood and wind losses and the double recovery rule ensures that proper adjustment by the insurance companies or segregation of covered and excluded damages will, in theory, prevent the insured from receiving a double recovery." *Id.*

"Because Louisiana's double recovery bar prevents the insured from recovering in excess of actual loss, a district court does not necessarily err by evaluating double recovery prior to the resolution of disputed issues of causation." *Bradley*, 620 F.3d at 524. "Where the value of the property in question has been conclusively established, a district court may find as a matter of law that the insured is limited to a specific recovery." *Id.* (citing *Lambert v. State Farm Fire & Cas. Co.*, 568 F. Supp. 2d 698, 703 (E.D. La. 2008) (citing *Broussard v. State Farm Fire & Cas. Co.*, No. 06–8084, 2007 WL 2264535, at *5 (E.D. La. Aug. 2, 2007))). "But where the insurer has not conclusively established the value of the property—as [in *Bradley*]—the court cannot find as a matter of law that the insured is limited to a specific recovery based on the insurer's asserted valuation of the property." *Id.* at 524–25 (citing *Lambert*, 568 F. Supp. 2d at 703).

"Generally, it is the task of the fact-finder to apportion the damage caused by wind and the damage caused by flood." *Bradley*, 620 F.3d at 523 n.14 (citing *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 2009)). As the Fifth Circuit stated in *Dickerson* (and quoted with approval in *Bradley*):

> Under Louisiana law, the insured must prove that the claim asserted is covered by his policy. Once he has done this, the insurer has the burden of demonstrating that

9

> the damage at issue is excluded from coverage. Thus, once [the insured] proved his home was damaged by wind, the burden shifted to [the insurer] to prove that flooding caused the damage at issue, thereby excluding coverage under the homeowners policy. As no one disputes that at least some of the damage to the [the insured's] home was covered by the homeowners policy, [the insurer] had to prove how much of that damage was caused by flooding and was thus excluded from coverage under its policy.

*Id.* (quoting *Dickerson*, 556 F.3d at 295 (internal citations omitted)). Thus, in *Bradley*, the Fifth Circuit found:

> Assuming the double recovery rule does not bar further payments to the Bradleys, then they are entitled to recover up to the policy limits of the homeowners policy. But while the Bradleys would preliminarily be entitled to recovery, deductions may be made by Allstate for excluded losses. The losses attributable to excluded events, specifically flood-related damages, raise factual questions inappropriate for summary judgment. Under the *Dickerson* framework, Allstate bears the burden of establishing how much of the total loss is attributable to flood damage. *Dickerson*, 556 F.3d at 295. The Bradleys' policy, of course, contains one additional, crucial limitation: by the explicit terms of the contract, Allstate is liable for no more than the stated policy limits regardless of the extent of the Bradleys' loss.

*Id.* at 525.

Judge Barbier's post-*Chauvin* ruling in *Halmekangas v. State Farm Ins. Co.*, No. 06-3942, 2008 WL 5381603 (E.D. La. Dec. 19, 2008) is also persuasive. The Court fully summarized this case in the *VPL Ruling* (Doc. 56 at 20–23), but that discussion will be repeated here, given the decision's importance to the outcome of the instant motion.

In *Halmekangas*, the homeowner's property was damaged by flooding from Hurricane Katrina, and, three days later, the "property was completely destroyed by fire[.]" *Halmekangas*, 2008 WL 5381603, at *1. The homeowner's insurer, ANPACLA, made certain payments under its policy, and a second insurer, State Farm, paid under the flood policy. *Id.*

In a motion for partial summary judgment, ANPACLA argued "that when an insured home is destroyed by flood under a flood policy as well as some other covered peril under a homeowners policy, the insured owner cannot receive a double recovery by recovering proceeds under both

policies for the same damages." *Id.* ANPACLA sought "a credit for **all** insurance proceeds paid to [the homeowner] up to the pre-storm value of the home to prevent any windfall to the insured." *Id.* (emphasis in original) Plaintiff responded that ANPACLA's authority all involved "**concurrent causes** of damage to an insured property[,]" not situations, as here, where property is "partially flooded, and . . . then *later* destroyed completely by fire." *Id.* (emphasis in original). The homeowner further argued that, under the VPL, "he is entitled to the total value of his loss under the policy-namely the full pre-storm value of his home," and "any flood damage proceeds need not have been used to repair the flooded structure, and therefore should not be credited against the amounts he is due under the ANPACLA policy for the total destruction of his home by fire." *Id.* "In sum, [the homeowner] argues that he is not seeking a double recovery as suggested by ANPACLA, but is simply attempting to be made whole for his loss." *Id.*

> Judge Barbier granted the motion in part and denied it in part. He explained:
>
> Under Louisiana's VPL, an insurer is only required "to pay the agreed face value of the insured property **if the property is rendered a total loss from a covered peril.**" *Chauvin v. State Farm Fire & Cas. Co.,* 495 F.3d 232, 239 (5th Cir. 2007) (emphasis added). In addition, however, a homeowner's recovery "is limited to any previously uncompensated losses that are covered by his homeowner's insurance and which when combined with his flood proceeds do not exceed the value of his property." *Ragas v. State Farm Fire & Cas. Co.,* 2008 WL 425536, *6 (E.D. La. 2/11/08). Stated differently, while "it is fairly common, especially in Katrina-related cases, for a plaintiff to have both wind and flood damages, and coverages for both, this does not entitle the plaintiff to double recovery in the event of a given loss." *Id.* Therefore, to the extent that a plaintiff may attempt to "re-characterize as wind damage those losses for which [he] has already been compensated by previously attributing them to flood waters," a court should not allow such a double recovery. *Id.* Nonetheless, plaintiffs can recover under both a flood and non-flood policy when a flood and another covered peril combine to result in a total loss "if they can segregate and prove the two types of damages." *Wellmeyer v. Allstate Ins. Co.,* 2007 WL 1235042, *2 (E.D. La. 2007). Furthermore, even when the VPL applies due to a total loss caused by a covered peril, "Louisiana's Valued Policy Law [does not] authorize a double recovery on the same loss." *Williams v. State Farm Fire & Cas. Co.,* 2008 WL 4948491, *1 (E.D. La. 2008). To the contrary, "when applicable, [the VPL] addresses only the **appropriate valuation of a total loss** that is caused by a covered peril." *Id.* (emphasis added).

11

> Under the applicable law as laid out above, ANPACLA's motion should be granted, but only to the extent that it seeks a credit for flood insurance payments covering actual damage to the insured property by flooding. [The homeowner] cannot procure a double recovery based on payments for the same damage under his flood and homeowner's policy even if the fire, a covered peril under the valued policy, caused the total loss of his property. Nonetheless, [the homeowner] has the right to segregate and prove what damages were caused by flood and what damages were caused by the subsequent fire. Thus, although [the homeowner] cannot recover more than the pre-Katrina value of his home by collecting from both his homeowners and flood insurer, he should nonetheless have the opportunity to segregate which damages were caused by flood versus fire to recover up to the entire pre-Katrina value of his home. Thus, despite the fact that ANPACLA is correct that [the homeowner] cannot recover twice for the same damage, there are material issues of fact precluding summary judgment on the specific question of how much of the remainder of the damage amounts claimed by [the homeowner] vis-a-vis the pre-Katrina value of his home were caused by flood versus fire. Furthermore, at least based on the pleadings for the present motion, there is a material issue of fact as to the actual pre-Katrina VPL valuation of the total loss of the home, which is crucial to a determination of whether and how much a flood offset should apply in this case. Thus, while ANPACLA's motion should be granted as it relates to the very basic and general premise that [the homeowner] cannot recover twice under different policies for the same damage, it should be granted only on that narrow and self-evident basis.

*Halmekangas*, 2008 WL 5381603, at *2 (emphasis in original). Judge Barbier granted the motion "***only insofar as it seeks a ruling on the basic principle that*** [***the homeowner***] ***cannot recover twice for the same damages***-that is, [the homeowner] cannot recover under his fire policy for the same damages that he has already recovered under his flood policy." *Id.* at *3 (emphasis in original). Thus, the homeowner was entitled to present evidence "to the extent that there remain factual issues pertaining to the actual pre-storm value of [his] property, and to the extent that [he] may be able to segregate what damages attributable to the flooding during Katrina from those damages attributable to the fire after Katrina[.]" *Id.* However, ANPACLA was not entitled to summary judgment "specifically awarding it an offset in the full $83,399.57 amount paid by [the homeowner's] flood insurer because there remain[ed] issues of fact regarding whether the post-Katrina fire resulted in damages that were not included in the flood insurance payment." *Id.*

## C. Analysis

### 1. Questions of Fact Preclude Summary Judgment.

Having carefully considered the matter, Defendant's motion will be granted in part and denied in part. The motion is granted for the innocuous proposition that Plaintiffs cannot recover under the Policy for more than the limits. The Policy provides that AIC will "not be liable in any one loss: . . . [f]or more than the applicable limit of liability." (Policy, Doc. 29-5 at 24.) The Policy describes the following "Limits" and "coverage for which premium was paid:"

| | |
|---|---|
| Coverage A – Dwelling | $ 138,500 |
| Coverage B – Other Structures | $ 13,850 |
| Coverage C – Personal Property | $ 69,250 |
| Coverage D – Loss of Use | $ 27,700 |
| Coverage E – Liability | $ 100,000 |
| Coverage F – Medical Payments | $ 1,000 |

(Policy, Doc. 29-5 at 2, 4.) Thus, Plaintiffs cannot recover more than is allowed for each category. *See Bradley*, 620 F.3d at 525 ("The Bradleys' policy, of course, contains one additional, crucial limitation: by the explicit terms of the contract, Allstate is liable for no more than the stated policy limits regardless of the extent of the Bradleys' loss."). This should not be seriously disputed.

The motion is also granted, as in *Halmekangas*, "**on the basic principle that** [*the homeowners*] **cannot recover twice for the same damages**-that is, [the homeowners] cannot recover under [their] fire policy for the same damages that [they have] already recovered under [their] flood policy." *Halmekangas*, 2008 WL 5381603, at *3. *See also Bradley*, 620 F.3d at 523 ("An insured 'whose property sustains damage from flood and wind can clearly recover for his or her segregable wind and flood damages except to the extent that he seeks to recover twice for the same loss.' " (citations and quotations omitted)).

However, the motion is denied in that there are genuine issues of material fact that preclude summary judgment as to the amount of the offset. The Court must emphasize a few key points at

the outset. First, "[g]enerally, it is the task of the fact-finder to apportion the damage caused by wind and the damage caused by flood." *Bradley*, 620 F.3d at 523 n.14 (citation omitted). Second, "[u]nder the [Fifth Circuit's] *Dickerson* framework, [the insurer] bears the burden of establishing how much of the total loss is attributable to flood damage." *Id.* at 525 (citing *Dickerson,* 556 F.3d at 295). And third, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure [(that is, beyond doubt)] all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot*, 780 F.2d at 1194; *peradventure*, MERRIAM-WEBSTER'S DICTIONARY, *supra.*

Here, Defendant has failed to meet its burden of proving judgment as a matter of law "beyond doubt." In short, there are numerous issues of fact as to the amount of the offset.

First, the flood payments themselves do not conclusively establish the amount of the offset. On the one hand, Defendant submitted the Occidental checks provided for the flood damage in the amounts of $61,357.81 and $12,290.58. (Occidental Checks, Doc. 29-7.) But, on the other hand, while Defendant submitted evidence of the *amounts* paid by Occidental for the flood, Riley testified that she could not "really tell just by looking at [the] estimate what was finally approved and paid by Occidental[.]" (Riley Dep. 113:15–24, Dep. 39-10 at 3.) Riley later said that there was "no way for AIC to state whether any of the valuations or the damages that are listed [by Occidental] [were] either complete or accurate[.]" (Riley Dep. 149:1–15, Doc. 39-12 at 3.) Given this evidence, at this time, there appear to be, at very least, genuine issues of material fact precluding summary judgment with respect to the flood payments.

Second, there are questions of material fact as to the total amount from which the deduction should be made. Again, "[a]n insured 'whose property sustains damage from flood and wind can

14

clearly recover for his or her segregable wind and flood damages except to the extent that he seeks to recover twice for the same loss.' " *Bradley*, 620 F.3d at 523 (quoting *Johnson v. State Farm Fire & Cas. Co.,* No. 07–1226, 2008 WL 2178059, at *2 (E.D. La. May 19, 2008) (citing *Weiss v. Allstate Ins. Co.,* No. 06–3774, 2007 WL 891869, at *2 (E.D. La. Mar. 21, 2007))). Critically, "[i]nsureds are entitled to recover any previously uncompensated losses that are covered by their homeowners policy and which, when combined with their flood proceeds, do not exceed the *value of their property*." *Id.* (emphasis added) (citing *Johnson*, 2008 WL 2178059, at *2).

This is important because, as stated above, the total limit for "Coverage A – Dwelling" was $ 138,500. (Policy, Doc. 29-5 at 2, 4.) But, as Plaintiffs argue, AIC representative Marcy Riley testified that the "total estimated loss for replacement cost was [$]178,854.28" and that, after depreciation, the actual cash value was $159,887 for the estimated loss. (Riley Dep. 34:16–24, Doc. 37-2 at 1.) AIC argues that any offset would be deduced from the Coverage A limit (Doc. 51 at 4), and Plaintiffs argue that the total replacement cost controls (Doc. 47 at 8). Neither party cites any authority for their respective positions. However, given the fact that, under *Bradley*, Defendant has the burden of proving the extent of the offset, and given the fact that, under *Bradley*, the key is whether the flood and homeowners proceeds exceed "the value of their property," the Court finds that a reasonable juror could conclude that the offset amount should be based on the replacement cost minus depreciation rather than merely the upper limits of Coverage A. In short, this is a question for the jury. *See Halmekangas*, 2008 WL 5381603, at *2 ("at least based on the pleadings for the present motion, there is a material issue of fact as to the actual pre-Katrina VPL valuation of the total loss of the home, which is crucial to a determination of whether and how much a flood offset should apply in this case."); *Johnson*, 2008 WL 2178059, at *2 & n.3 (calculating the amount "outside the realm of double recovery" "using the higher estimate of

15

$164,899.55 as the Replacement Cost of Plaintiffs' dwelling" (and not using the policy limit on the dwelling, which was $106,300.00), but ultimately denying summary judgment because Plaintiffs' estimated replacement cost "introduce[d] [a] material factual dispute as to the amount against which to measure whether there may be a double recovery.").

Third, there are questions of fact as to how Defendant calculated the offset payment for Coverage A and what amounts should be included therein. Specifically, Plaintiffs were paid $61,357.81 by Occidental for flood damage to the structure of their Property (Occidental Checks, Doc. 29-7; Letter from Occidental Flood Claims Department, Doc. 29-6 at 1.) However, AIC offset their payment for the fire by $64,051.09 for the "Flood Building Estimate Grand Total." (Letter, Doc. 29-23 at 5.) This results in a difference of $2,693.28 for which there is a question of fact. Similarly, Barbara Nelson averred that she "and her granddaughter used the minor windstorm damage claim proceeds paid by AIC to purchase materials for repairs" that were "completely destroyed by the fire before the repairs were completed." (B. Nelson Aff. ¶ 26, Doc. 39-8 at 3.) Presumably, this would constitute flood insurance proceeds she recovered that may also require reimbursement from AIC (i.e., for which there is no double recovery). All of this demonstrates that AIC cannot establish "beyond doubt" the amount of the offset, so summary judgment is inappropriate. *See Bradley*, 620 F.3d at 524–25 ("But where the insurer has not conclusively established the value of the property—as [in *Bradley*]—the court cannot find as a matter of law that the insured is limited to a specific recovery based on the insurer's asserted valuation of the property." (citing *Lambert*, 568 F. Supp. 2d at 703)).

### 2. Defendant's Legal Arguments Are Not Persuasive.

Additionally, Defendant's legal arguments are not as strong as they first appear. Again, Defendant argues that Plaintiffs should be estopped from "re-characterizing as fire damage, losses

for which they accepted flood insurance compensation." (Doc. 30-1 at 8.) On the one hand, as Judge Barbier said in *Halmekangas*, "to the extent that a plaintiff may attempt to 're-characterize as wind damage those losses for which [he] has already been compensated by previously attributing them to flood waters,' a court should not allow such a double recovery." *Halmekangas*, 2008 WL 5381603, at *2; *see also Esposito v. Allstate Ins. Co.*, No. 06-1837, 2007 WL 1125761, at *2 (E.D. La. Apr. 16, 2007) (holding that homeowner was "entitled to recover in this lawsuit any *previously uncompensated* losses that are covered by his homeowner's policy *and which when combined with his flood proceeds do not exceed the value of his property*" but also that, after homeowner received payments from the NFIP for flood damage, that he was "not entitled to [either] obtain a windfall double recovery by now recharacterizing as wind damage those losses for which he has already been compensated by previously attributing them to flood waters" and or "to cavalierly repudiate those prior statements while nevertheless retaining the funds that he received based on those same statements." (emphasis in original)); *Lambert*, 568 F. Supp. 2d at 704–05 ("Although she is entitled to assert a claim pursuant to her homeowner's policy, Lambert 'is not entitled to obtain a windfall double recovery by now re-characterizing as wind damage those losses for which [she] has already been compensated by previously attributing them to flood waters.' " (citing, *inter alia*, *Esposito, supra.*)).

However, in *Halmekangas*, Judge Barbier also said immediately after the above quote, "Nonetheless, plaintiffs can recover under both a flood and non-flood policy when a flood and another covered peril combine to result in a total loss 'if they can segregate and prove the two types of damages.' " *Id.* (quoting *Wellmeyer v. Allstate Ins. Co.,* 2007 WL 1235042, at *2 (E.D. La. 2007)). This Court also finds *Wellmeyer* instructive. There, the insurer argued that, "by collecting flood policy money pursuant to the National Flood Insurance Program, the

17

[homeowners] have made a statement against interest, revealing that their home was, in fact, damaged by floods and may not now claim damage also by wind. *Wellmeyer,* 2007 WL 1235042, at *2. But Judge Feldman found this argument unpersuasive and explained:

> Allstate's claim . . . does not withstand scrutiny. It fails to recognize the obvious: that a combination of wind and flooding may have possibly damaged the Wellmeyers' home. Subject to a discussion regarding the limits of recovery, nothing bars the Wellmeyers from collecting under their homeowner's policy for wind damage and from collecting under their flood policy for flood damage if they can segregate and prove the two types of damages.

*Id.*

The same reasoning applies here. Plaintiffs will be entitled to "segregate and prove the two types of damages" they had for the flood and fire. Defendant has failed to demonstrate that it should obtain summary judgment "beyond doubt," so the motion is denied on this issue.

Further, the Court notes that, in most of the district court cases Defendant cited in support of the *Offset Motion*, the Eastern District recognized the insurer's right to offset but ultimately concluded that questions of fact precluded summary judgment as to the amount. *See Lambert*, 568 F. Supp. 2d at 703 (Africk, J.) (recognizing that plaintiff was not entitled to "double recovery" but denying summary judgment which limited plaintiff's recovery "to the difference between the pre-storm value of [homeowner's] property and the amount paid" to homeowner on the flood policy because there was no evidence "conclusively establish[ing] the value of" her home before Hurricane Katrina) (citing *Broussard v. State Farm Fire & Cas. Co.*, 2007 WL 2264535, at *5 (E.D. La. Aug. 2, 2007) (Vance, J.) ("The Court is therefore not presented with undisputed evidence that conclusively establishes the value of plaintiffs' home and contents . . . Thus, on this record, the Court cannot find as a matter of law that plaintiffs are limited to a specific recovery based on the defendant's asserted valuation of plaintiffs' property."); *Johnson*, 2008 WL 2178059, at *2–4 (E.D. La. May 19, 2008) (Lemelle, J.) (denying partial summary judgment to insurer and

finding, "[w]hile Defendant correctly highlights the law regarding double recovery, material factual disputes preclude this Court from applying any such limits in this matter before a trier of fact resolves these genuine issues," including "whether full compensation has been received since the value of the property [was] disputed"); *Majoue v. Allstate Ins. Co.*, No. 06-4271, 2007 WL 2571914, at *3 (E.D. La. Aug. 30, 2007) (Lemmon, J.) (granting motion for partial summary judgment "to the extent that [insurer was] entitled to an off-set for damages previously paid to plaintiff under his [flood and homeowners] policies and [denying] regarding the extent of additional damages to which plaintiff may be entitled."); *Wellmeyer*, 2007 WL 1235042, at *3 (finding summary judgment "inappropriate at this point" because (1) "[i]f the [homeowners could] marshal facts that a peril covered by the homeowner's policy (wind) caused uncompensated damage, they could be entitled to indemnity" and (2) "there [were] also unresolved issues of material fact relating to the damage of the contents within the home, 'other structures' covered under the homeowner's policy, and the amount of living expenses."); *Weiss v. Allstate Ins. Co.*, No. 06-3774, 2007 WL 891869, at *2–3 (E.D. La. Mar. 21, 2007) (Vance, J.) (denying summary judgment by insurer where plaintiffs home was damaged by wind and flooding, where plaintiffs sought compensation only for the wind damage, and where there were questions of fact as to whether the damage "was caused exclusively by water" and as to what the actual value of the home was). The same result is warranted here.

For all these reasons, the Court finds that genuine issues of material fact preclude summary judgment as to the amount of the offset. Defendant has not shown entitlement to relief "beyond doubt." As a result, partial summary judgment on this issue will be denied.

IV.  **Conclusion**

Accordingly,

19

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 30) (the "*Offset Motion*") filed by Defendant Americas Insurance Company is **GRANTED IN PART** and **DENIED IN PART**, as detailed above.

Signed in Baton Rouge, Louisiana, on November 8, 2019.

**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**